(Cuyahoga Co. O., Common Pleas, 1901.)

WILLIAM B. WHITE v. ARTHUR G. MARSHALL.

---

(1.) Where a prosecution is instituted by a private individual whose duty it is to disclose crimes to the authorities, he will not be permitted to use the criminal process in any way to enforce the collection of a debt; and so long as the state intends to prosecute the criminal action, if the offense charged is a felony it is the duty of the individual to refrain from any steps in a civil action if one is commenced for the same wrong, until the criminal action is concluded.

(2.) So long as one extradited from another state to this state as a fugitive from justice, is under the process of the Ohio court, awaiting trial for a criminal charge, the court ought to suspend the remedy provided by the statute for the arrest before judgment, in a civil action, especially when that affidavit was filed and the order of arrest procured in the face of a pledge made by the plaintiff in such civil action to the executive department of the state, that he would not do so; although there is no statute forbidding him from doing this, or there is a statute authorizing him to do it.

(3.) Where in such case the defendant had answered to the petition in such civil action, the filing of such answer will not be held a waiver of the privilege of immunity from arrest under such civil action or any other privilege with which the law has clothed him.

(4.) In such case a proceeding for the arrest before judgment of a defendant under the jurisdiction of the court as a fugitive from justice, extradited from a foreign jurisdiction, is unlawful and wrongful and in violation of the duty that plaintiff owed the state.

---

STRIMPLE, J. (Orally.)

In the case of William B. White against Arthur G. Marshall, there has been a motion heard before this branch of the court, asking the court to quash the summons issued therein and dismiss the action, and to vacate the order of arrest before judgment; and the grounds alleged in said motion are as follows:

That the said defendant, Arthur G. Marshall, at the time that he was arrested under the order in the civil proceeding was under indictment for the offense of obtaining property by false pretenses, which said property becomes the subject-matter of the civil action. And that the said Marshall was brought within the civil jurisdiction of this court by an extradition proceeding, from a sister state, instituted at the request of the plaintiff White. And that the said service of summons was made on him and he was arrested under the order of arrest issued in the civil case, without opportunity to return to the state from whence he was extradited; and that at the time he was arrested, he was a suitor and entitled to be privileged from arrest under and by virtue of section 5457 of the Revised Statutes of Ohio, which provides that all suitors going to, attending or returning from court, while so doing, are privileged from arrest.

The facts in this case, as disclosed by the proof and the admissions of counsel, are as

follows:

The plaintiff, William B. White, had ex-changed his notes and some other personal property consisting of horses and vehicles, for stock in an alleged corporation known as The Mississippi Valley Lead Company, and it is claimed that this stock was worthless; that it was represented to be of great value; that by reason of these false representations the plaintiff, White, parted with his property; and that the said Marshall at the time he thus obtained the property of White made the false representations with intent to defraud.

White, as he had a right to do and as it was his duty to do, believing that an offense had been committed against the law of the state, appeared in the office of the prosecuting attorney of this county and after a statement of his case to the prosecuting attorney, was admitted to the grand jury room—a special session of the grand jury then sitting, and gave evidence upon which hearing, at least sufficient evidence, was produced so that the grand jury of this county returned an indictment against the said Marshall for obtaining property and money by false pretenses.

Marshall was in a foreign jurisdiction at the time this indictment was returned, and the prosecuting attorney instituted a proceeding in extradition in which proceeding the plaintiff White gave his oath that the extradition was sought for no other purpose than that of prosecuting the defendant criminally.

The governor of the state, acting on the proof presented, exercised his sovereign power by request upon the governor of the state where Marshall was then domiciled; the governor of that state, exercising his sovereign power as a representative of his state, honored the request made by the governor of Ohio and Marshall was returned by an agent of this state and placed in the jail of Cuyahoga county.

The facts disclosed that White, shortly after his return, (Marshall's return), filed a petition in the court of common pleas and, as a basis of his action, set up the fraudulent transaction, that same transaction that became the basis of the criminal charge, and had service of summons upon the defendant while he was incarcerated in the jail; on August 29th he filed an affidavit for an attachment, and on August 30th filed another affidavit setting forth more in detail the transaction, and on the 31st of August filed still another affidavit of attachment seeking to reach the property of this defendant, and about the same time an affidavit for an order of arrest of the defendant Marshall, was filed and an order of arrest before judgment was issued by the clerk of this court and placed in the hands of the sheriff of Cuyahoga county who then had the custody of Marshall under the criminal charge.

On the 16th day of September the defendant, Marshall filed an answer to the matters set up in the petition of White, and on the 23rd day of September the plaintiff filed his praecipe for an alias order of arrest which was delivered to the sheriff of Cuyahoga county, and on the 24th day of September the defendant, Marshall entered into bonds to the state of Ohio in the sum of ten thousand dollars for his appearance at the present term of court from day to day, to answer to the criminal charge. And, as disclosed by the evidence, while he (Marshall) was returning from the criminal court room he was arrested by the sheriff of Cuyahoga county, on the alias order of arrest and again incarcerated in the jail of the county in default of a bond in double the amount sued for, as required by the statute.

Section 5517 of the Revised Statutes provides that a defendant who has been arrested in a civil action can, on motion at any time before judgment, apply to the court in which the suit is brought, or to any judge of a court of record of the state, to vacate the order of arrest, or to reduce the amount of the bail.

It is a general principle of the common law that where a prosecution is instituted by a private individual whose duty it is to disclose crimes to the authorities, he will not be permitted to use the criminal process in any way to enforce the collection of a debt; and the greater weight of authority is to the effect that so long as the state intends to prosecute the criminal action, if the offense charged is a felony it is the duty of the individual to refrain from any steps in a civil action if one is commenced for the same wrong, until the criminal action is concluded, and there are very grave and important reasons why this should be so. The state does not carry on prosecutions for the benefit of any individual; neither ought the machinery of the state to be used or permitted to be used for the benefit of any one as against the interest of the state itself.

Treating the question broadly, the governor of the state of Ohio upon the proof furnished by the plaintiff satisfying him that this extradition proceeding was sought only for the purpose of the criminal prosecution, exercised the sovereign function, a function which the courts cannot review for it has been so held repeatedly,—entered into negotiations with another state through the medium of its sovereign exercising the same functions, and procured the return of this defendant to this state against his will.

In 1870 the legislature of the state passed a joint resolution relative to the surrender of persons charged with crime, as follows:

"Whereas, the clause in the constitution of the United States, requiring the surrender of a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, was intended to subserve only great public interests, and not to apply to trivial offenses or to be made subservient to private interests, by being used to enforce the collection of debts, or to remove a citizen of any state into a foreign jurisdiction, that he might there be served with civil process; and

"Whereas, great abuses have recently been perpetrated in this regard against citizens of this state; and

"Whereas, by the practice of all the states, a discretion has been recognized as proper to be exercised by the executive authorities of each state, both as to the cases in which a requisition shall be made for the surrender of an alleged fugitive, and as to those in which the demand shall be granted, and it is proper that this discretion should, as far as possible, be limited and defined; therefore,

"Resolved by the general assembly of the state of Ohio, that the executive authority of this state, in its action under said clause of the constitution of the United States, should, in the opinion of the general assembly, be governed by the following rule, both in making requisitions on other states, and in allowing requisitions made by other states on this state, namely: No requisition shall be made or allowed for an alleged fugitive, unless the governor be clearly satisfied that the requisition is sought or made in good faith, for the punishment of an offense within the proper meaning of the said clause of the constitution, and that it is not sought or made for the purpose of collecting any debt or pecuniary mulct, or for the purpose of removing the alleged fugitive to a foreign jurisdiction, with a view there to serve him with civil process."

Since that time the executive department of the state, in a code of rules governing the extradition of persons charged with crime, has required, in all cases of false pretense and embezzlement, the affidavit of the prosecuting witness to accompany the indictment, to the effect that he does not seek the return of the person charged with crime, for any other purpose, or for the purpose of collecting any debt or pecuniary mulct, or for the purpose of removing the alleged fugitive to a foreign jurisdiction with a view there to serve him with civil process, nor for any other purpose than that of a criminal prosecution. And that was the compact that was entered into by the state of Ohio when Arthur G. Marshall was turned over to Ohio for this criminal prosecution; and that compact, growing out of the comity of the states thus represented by their respective heads, has always been recognized by the state, and it is the duty of the courts to enforce it.

This doctrine is quite fully set forth in the case of *Work* v. *Corrington,* 34 Ohio St., 64.

It would seem to the court that so long as this defendant Marshall is under the process of this court, awaiting trial for a criminal charge, the court ought at least to suspend the remedy provided by the statute for the arrest before judgment, in a civil action, especially when that affidavit was filed and the order of arrest procured in the face of a pledge made by this plaintiff to the executive department of the state, that he would do no such thing,—and it does not answer the question to say, that there is no statute forbidding him from doing this, or that there is a statute authorizing him to do it.

Dealing with the liberty of the individual is as sacred a duty as one can perform.

In the course of the argument, counsel stated that "what we want is our money."

What the state wants, and the only thing that the state can have, is a just determination of this criminal charge.

To throw this man back into jail under an order of arrest before judgment, while this criminal charge is pending is, in our opinion, unjust and in accordance with the law.

The plaintiff's duty to the state is first. Then he may have his remedy by taking any of the steps which the law provides he may take.

But this question is not new. Governor Nash, while on the supreme court commission, passed upon a case reported in *Compton, Ault & Co.* v. *Wilder,* 40 Ohio St., 130, a similar case to the one at bar.

Wilder was a resident of Pennsylvania, was brought from that state on a requisition by the governor of Ohio for obtaining a promissory note by false pretenses, and entered into his recognizance to appear before that court. Compton, Ault & Co. commenced a civil action for an alleged indebtedness arising out of the note mentioned in the criminal prosecution as having been obtained by false pretenses, and had a summons and order of arrest issued therein, which were served in person upon Wilder sometime in the evening of the day upon which he gave bail. The court, in the opinion in that case, took occasion to say that "Wilder had been surrendered by the state of Pennsylvania, to be prosecuted by the state of Ohio and in her name for an alleged crime. It was for this purpose alone that the state of Ohio asked his extradition. It was for this purpose alone that the state of Pennsly-

vania handed one of her citizens over to the officers of Ohio."

In this case the machinery was set in motion by Compton, Ault & Co. by their application to the governor of Ohio. Good faith upon the part of these applicants and good faith upon the part of Ohio to the surrendering state, demanded that Wilder, having been brought by force into Ohio, for a specific purpose, should not be deprived of any rights, except such as he had forfeited by the commission of the alleged crime."

"It was bad faith in Compton, Ault & Co. to commence a civil action and attempt to serve a summons and an order of arrest therein upon Wilder before conviction and before he had an opportunity to return to his home. It would become bad faith in this state if her courts should make such service effective."

Then follows a review of the constitutional and legislative provisions relating to extradition, which tend to support the doctrine which I have heretofore announced: *"That the state ownes a duty to the state from which this defendant was brought;* which duty would be violated by the arrest before judgment.

These provisions in a country like ours are useful and indispensable; they were intended to subserve great public interests. The temptation to make the extradition process subservient to private interests is great.

"This weapon intended alone to secure the punishment of crime, is frequently resorted to, to enforce the collection of private debts or to remove a citizen from his home into a foreign jurisdiction that he may there be served in a civil action."

The judge in the opinion says:

"This growing evil has been seen and appreciated by the chief executives of many states, and to guard against it rules and regulations are being adopted, which may make the extradition of an alleged fugitive, in a proper case, extremely difficult, and which rules and regulations I may now say, *have been adopted.*

"It is the duty of the judiciary to be as swift in putting the seal of condemnation upon this abuse as have been the other branches of the government."

"The certain remedy to prevent its growth is, to deprive all persons who participate in the mis-use of the power to extradite persons, alleged to be fugitives from justice, of the fruits resulting from such participation."

But it is claimed here, that this defendant answered to the petition in the civil action, chose his forum for the adjudication of the facts alleged in the petition, for the adjudication of his rights as between this plaintiff and himself,—and, having done so, and the statute

granting the right to the plaintiff after the filing of a certain affidavit, to have an order of arrest issue,—that when he *did* file his answer, he waived every privilege which the law clothed him with.

He *did not and could not waive for the court the right to protect its process from abuse,* nor did he waive his privilege from arrest as a suitor if such he was.

In our judgment, the state of Ohio having accepted his bond to appear from day to day before the criminal branch of this court to answer to the charge of obtaining money by false pretenses, he was a suitor in that court,—compelled by its process to attend,—and was privileged from arrest, under the express provisions of the legislature.

The facts show that he had been called before the court, or rather the court had ordered the sheriff to bring him before the court for the purpose of requiring him to give a bond for his appearance, and the arrest on the order was made while he was leaving the criminal court room or the court house—I am not certain which, but he was not attending upon the court, not even of his own will but by the order the court itself;—and to serve him with an order of arrest *at that time,* in our judgment, brings him within the privileges of the statute. It is, in our judgment, as well, an abuse of the process of the court.

Not to be arrested while attending as a suitor, is a privilege. He *may* waive it. He *has not* waived it. He is here appealing to the court to protect him in his privilege.

We have mentioned these grounds, because we believe that, under the circumstances, he was privileged from arrest. But we choose to base our decision upon a still broader ground, to-wit:

It is the duty of the court to uphold and preserve the honor and integrity of the state. The arrest on the order of arrest before judgment violates the integrity of the state as pledged in the extradition proceeding, and is an abuse of the process of this court.

It is the duty of the court to put its seal of condemnation on the conduct of this plaintiff in his attempted abuse of the extradition process, and to deprive him of the fruits arising from that abuse.

This proceeding for the arrest before judgment of this defendant when he was under the jurisdiction of this court as a fugitive from justice extradited from a foreign jurisdiction, was unlawful and wrongful and in violation of the duty that he owed the state.

The just thing to do, in our judgment, so far as the plaintiff is concerned, is to deprive him of the advantage gained by the order of arrest in the civil proceedings by vacating it,—

and restoring the defendant to his liberty so far as he has been deprived of it by the order.

*Kline, Carr Tolles & Goff,* for Plaintiff.

*McKisson & Thomas,* for Defendant.